**People of the State of Illinois, Plaintiff-Appellee, v. John Hohmann, Defendant-Appellant.**

**Gen. No. 50,511.**

First District, First Division.

June 27, 1966.

Sherman Carmell, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, John Hohmann, was found guilty by the court of the crime of burglary. He appeals, contending the evidence is insufficient to sustain the conviction.

At about 6:00 a. m. on October 22, 1964, Robert Davis left for work, leaving his apartment at 1742 W. Belmont Avenue, Chicago, unoccupied. At approximately 10:00 a. m., Merhl Smith, his uncle, driving a Flash cab, was hailed by the defendant whom Smith said came from the gangway where Davis lived. He was carrying a bundle wrapped in "some type of a sweater or shirt." At defendant's direction, Smith drove him to a grocery store at Willow and Dayton Streets. During the course of the ride, Smith noticed that defendant changed shoes and placed shoe trees in the shoes which he had removed from his feet. He also saw, when the bundle was open, an orange gun cleaning kit which looked familiar. Upon arrival at the destination, defendant went into the store to get additional money for the fare, leaving the bundle in the cab. Smith's curiosity having been aroused, he opened the bundle and saw the gun kit and shoe trees which he had previously seen at Davis' home, and also a leather holster.

Defendant returned, paid the balance of the fare and reentered the store. Smith parked his cab around the corner, called Davis at his place of employment, and made arrangements to meet him at the grocery store. Upon his return he saw defendant leave the store, enter an alley and drop something in a trash can. Smith went to the trash can and recovered the set of shoe trees he previously had seen in the bundle. He then saw defendant hail another Flash cab which he followed but lost in traffic. He hailed a passing police car, made an emergency call to the Flash cab office, and with the police went to 2216 Orchard Street where they saw defendant and another man, Leroy Kummer. Defendant was apprehended and taken back to the store at Willow Street

where Davis was waiting. Davis identified a sweater and a pair of shoes defendant was wearing as his property. When Davis asked defendant why he burglarized his home, defendant told him that if he would not press charges and get him out of the arrest, defendant would see to the return of his merchandise.

Davis, in company with the police, then went to his home where he found the door ajar with the broken half of a butcher knife still stuck in the door jamb. An inventory of the apartment revealed that there was missing a sweater, a pair of shoes, a .38 caliber revolver and a .32 caliber automatic, a holster and a gun cleaning kit.

Davis said he knew the defendant vaguely, having met him two days previously on October 20, 1964, at a gas station; they went to a tavern for a few beers after which Davis invited the defendant to his home for dinner; that when defendant left, two and a half hours later, he had not been given permission to take any property.

Defendant, Hohmann, testified that he went to Davis' home on October 22, found no one there, walked out to the cab, and proceeded to the grocery store at Willow and Dayton. He had a shirt and a pair of pants, wrapped together, under his arm. These had been left at his house to be washed by his mother and he was returning them. He had gone to the grocery store, where his sister had an account, for money to pay the cab. Upon coming out to the cab he recovered the bundle. He later went to a tavern, called Leroy Kummer, and took a cab to Kummer's house. He admitted wearing the sweater and shoes when arrested. He said he had purchased the shoes. He denied the burglary, changing shoes in the cab, dropping the old shoes in the trash can, or making the statement to Davis regarding the return of his property.

Defendant called Leroy Kummer to corroborate the meeting with him on the morning of October 22 at Kum-

mer's home. On cross-examination Kummer could not recall whether defendant brought anything with him, or that anything unusual happened. He then admitted giving the police a statement that defendant came to his home at 2116 N. Orchard St., about 10:30 a. m.; that he took two guns out of his belt and accidently discharged one of them. When Kummer looked out of the window he saw the police. Defendant put the guns on a bench in an enclosed porch and Kummer picked them up, putting them in his belt. When they left the apartment, defendant was apprehended and Kummer ran away. He was arrested the next day.

■ Defendant argues that although there was evidence that the door was forced open with a butcher knife, there was no testimony that the door had been previously locked and entry effected by force. Defendant was charged with the violation of section 19–1 of the Criminal Code, (Ill Rev Stats 1963, c 38, § 19–1) which is as follows:

> "A person commits burglary when without authority he knowingly enters into . . . a building . . . or any part thereof, with intent to commit therein a felony or theft."

Proof of force was not essential, still the evidence indicated that force was used, and the defendant admitted being in the vicinity at the approximate time. Burglary can seldom be proved by direct evidence of actual breaking and entry, and in most cases such facts must necessarily be inferred from other facts and circumstances proved or admitted. People v. Franceschini, 20 Ill2d 126, 130, 169 NE2d 244 (1960).

■ The evidence and circumstances sufficiently warranted a finding that defendant came out of the gangway, was in immediate possession of some of the stolen property, and had no authority to enter the premises.

Finally, defendant says the sentence rendered is illegal because the court failed "to inquire of the defendant if he had anything to say on his own behalf prior to sentence." The defendant advocates that we apply a presentence allocution rule as is codified in Rule 32(a) of the Federal Rules of Criminal Procedure, which provides:

". . . Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

Section 1–7(g) of our Criminal Code (Ill Rev Stats 1965, c 38, § 1–7(g)), covering this issue, provides:

"For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense."

█ The record before us discloses that the court did hear extensively the matter of aggravation and mitigation allowing both defendant's counsel and the defendant himself to participate in the discussion affecting the sentence imposed. We find that both our Criminal Code provision and the advocated rule were adhered to and see no need to apply a new concept. For these reasons the conviction is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.