People of the State of Illinois, Plaintiff-Appellee, v. John L. Bush and Luther W. Miller, Defendants-Appellants.

Gen. Nos. 51,214, 51,215.

First District, Second Division.

April 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman, Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Defendants, Luther W. Miller (age 19) and John L. Bush (age 25), join in a consolidated appeal from their

convictions, upon pleas of guilty, for the offense of armed robbery predicating their theory solely upon the excessiveness of the sentences imposed upon them by the trial court. They offer in support thereof the contention that the trial judge acted summarily and without aid of a hearing in aggravation and mitigation of the offense as was required of him by section 1–7(g) of our Criminal Code. Defendants request accordingly that, pursuant to the powers available to this court by virtue of Supreme Court Rule 615, their sentences be vacated and the cause remanded with directions to conduct such a hearing, or alternatively, that their sentences be reduced on the record before us as arbitrary and harsh.

In response the State submits that the practical consequence of the post-conviction proceeding conducted by the court below was, among other purposes, to in fact provide defendants with a full and formal hearing in aggravation and mitigation of their crime. The State also takes the position that inasmuch as the sentences entered were within the limits prescribed by the governing statute, the imposition of same by the trial judge must be deemed, absent a contrary showing, as within the legitimate bounds of sound judicial discretion, particularly in view of the gravity of the offense involved.

The facts giving rise to the instant cause concern themselves with the armed robbery of approximately $34,000 in cash from two Brinks guards in the process of making a money delivery to the R. R. Donnelly Company in the City of Chicago on August 19, 1966, at which establishment it appears that defendant Bush had been formerly employed. Defendants were apprehended by the authorities the very next day and identified in separate lineups as the offenders. Prolonged police investigations, however, succeeded in recovering but approximately $22,000 of the secreted proceeds.

Defendants were jointly indicted and arraigned upon the charge of armed robbery, each entering his respective

plea of not guilty by counsel. Thereupon, the cause was set down and proceeded to trial on December 2, 1966. On that date, at the requests of counsel for defendants, Philip Basvic (privately retained counsel for Bush) and Jerome Wexler (Assistant Public Defender representing Miller), an impromptu pretrial conference of unknown duration was conducted off the record for the subsequently acknowledged purpose of negotiating pleas of guilty to the charge, and as a prelude to which the trial judge admonished defendants in the following manner:

" . . . [do] you understand that in this conference which your attorney, . . . has requested, that we will learn all about you; that is, I will, from your attorney and from the State's Attorney, I will learn about your background, about your record, if you have any, and about the facts in this case. Do you understand that?"

Answers: "Yes."

The conference being adjourned, defendants returned to open court and announced their respective pleas of guilty to the offense in question.

Immediately following, the court ordered further proceedings to ascertain the precise factual context for the commission of the crime itself as well as in regard to the subsequent events culminating in defendants' arrests and acquisition of the money. This necessary material was supplied to the court by means of certain stipulations between counsels, offers of proof and the testimony of several witnesses, including that of defendants themselves. It was at this point that the court rendered formal findings of guilt, ordering that judgments be entered on his findings. Sentencing however was continued until further hearing on December 22nd, on the court's own motion, to facilitate additional investigation into the apparent and unexplained absence of in excess of $12,000 of the robbery proceeds. The judge advised defendants

that the stay would similarly provide them with an extended opportunity to inquire into and verify their purported lack of knowledge as to the whereabouts of the missing funds, the court remarking:

> "And depending upon the outcome of my determination of those facts will depend on the severity, or lack thereof, of the sentence I am going to impose upon these two defendants. You are both going to the penitentiary, you know that."

Contrary to defendants' suggestions however, it would appear from our examination of the Report of Proceedings of December 22, 1966, that such hearing was not as limited in scope of inquiry as that comment from the bench would alone indicate. Notwithstanding that hearing's otherwise ostensible purpose, we think it can be fairly concluded that defendants were afforded therein full and ample opportunity to present matters in mitigation of their conduct.

The material portions of the applicable statute (Ill Rev Stats (1965) c 38, par 1–7(g)) provides in this regard:

> "For the purpose of determining sentence to be imposed, the court *shall*, after conviction, consider the evidence, if any, received upon the trial and *shall* also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and *may* consider such evidence in aggravation or mitigation of the offense." [Emphasis supplied.]

In aid of our construction of the statute, we have no quarrel with defendants or their authorities to the extent that a trial judge cannot foreclose upon a legitimate attempt to introduce matters in mitigation, nor single out from the statute's requirements an offender who has pled guilty to his particular crime, as the fundamental duty remains incumbent upon the court to apprise itself

of that information which is available and relevant to his determination of the appropriate duration of imprisonment.

We are, nonetheless, of the disposition that defendants were permitted those presentencing opportunities to submit evidence in mitigation of their acts as would be in full compliance with the dictates of section 1–7(g). A perusal of that latter hearing of December 22nd discloses that the court, by stipulation, was aware of defendants' comparatively youthful ages, emphatic argument being directed therein at the amateurish and almost jestful manner in which the offense had been effectuated. To account for their clients' inability to explain their disposition of the undiscovered money, their attorneys alluded to defendants' prior testimony to demonstrate to the court that the defendants in the span of one day, flaunted their new found wealth by indiscriminately distributing bundles of wrapped paper currency in varying denominations to numerous friends.

Notwithstanding the court's professed distrust of polygraph examinations, counsel for Bush was permitted considerable latitude to offer and have read into the record the favorable results of a lie detector test to which his client had consented to corroborate his account of the missing proceeds. The court similarly was requested to note and consider that Bush suffered from a physical handicap (loss of leg), heard argument relative to his continued cooperation with the authorities, and received comment as to the absence of felonies in Bush's criminal record, although that record was never introduced.

Counsel for Miller pointed to Bush's superior age and former employment at the Donnelly Company to stress his client's passive participation in the offense. It was submitted that Bush had planned and was the "brains" behind the occurrence. Reiterating Miller's absence of knowledge as to the whereabouts of the $12,000, counsel apprised the court in his behalf that his criminal record

indicated only "petty theft, shoplifting, and things of this sort," again that record not being introduced into the proceedings. While a probation report on defendant-Miller had been ordered prepared by the court, no such report as to either defendant was ever offered into the record. This was the extent of the evidence and argument offered in mitigation of the offense.

At this juncture the trial judge delivered a brief statement in answer to that argument, manifesting his dismay over defendants' apparent disregard for human life by confrontation of two armed guards while themselves carrying loaded revolvers. The judge then sentenced defendant-Miller to a term of from not less than seven (7) nor more than twelve (12) years and defendant-Bush to a term of from not less than ten (10) nor more than fifteen (15) years, both sentences to be served in the Illinois State Penitentiary, and from which defendants bring this appeal.

Lest we are prepared to hold that a defendant can no longer meaningfully avail himself of the relief by reduction of sentence made obtainable by Rule 615 (Ill Rev Stats (1967) c 110A, par 615), we must necessarily presuppose that the statute places upon him the duty of providing the trial court with adequate and persuasive evidence in mitigation of his crime.

While the events transpiring during the pretrial "plea bargaining" conference are themselves open to conjecture, the admonishing remarks of the court made immediately prior thereto would nonetheless serve to indicate the trial judge's cognizance of the burden thrust upon him by the statute, to afford the opportunity to apprise the court of the salient elements indicative of a possible rehabilitation of the defendants. Defendants' authorities of People v. Smice, 79 Ill App2d 348, 223 NE2d 548 (1967) and People v. Mace, 79 Ill App2d 422, 223 NE2d 725 (1967) furthermore find no application in the case at bar, as the record from the instant post-hearing proceeding dem-

onstrates that, in fact, numerous and different circumstances were permitted to be argued before the court in behalf of defendants without objections or restrictions.

Significantly, defendants do not aver that any motion or request such as for a presentencing investigation or offer of proof, was ever denied them by the court below, nor do they purport to now advance some fact of an ameliorating nature to evidence defendants' good character, facts we might add, which they claim were prejudicially absent from the hearing in the trial court. By our interpretation of their position, defendants, in effect, endeavor to gain by their own inaction below. While the State does not attempt to suggest that defendants thereby waived the benefits of further hearing in the matter as was the point in issue in People v. Spaulding, 75 Ill App2d 278, 220 NE2d 331 (1966), defendants' contention taken in this light must be viewed with disfavor.

■ Where, as here, the court possessed sufficient evidence with which to arrive at an intelligent determination, we do not think the statute makes the trial judge chargeable with the duty of proceeding ex parte by independent examination in search of additional data relative to the offenders' environmental histories. People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1968).

Defendants were represented in the trial court by competent counsel and no claim is leveled at their mishandling of their case. In such an instance, we do not feel defendants can complain of the absence or inadequacy of favorable argument in mitigation of their crime, which information, if in fact favorable, certainly would have been peculiar to their own knowledge. Involving somewhat related circumstances, we think the case of People v. Smith, 62 Ill App2d 73, 210 NE2d 574 (1965) most expeditiously disposes of the point defendants urge. There the court stated:

" . . . the statute places the burden for the hearing where it properly belongs: upon the party who

64

has evidence to present. We see no solid reason why section 1–7(g) of the new statute should be given a different interpretation or why the burden of seeing that there is a mitigation hearing should be shifted from the defendant to the court. If the defendant has been of good moral character and his past life free of guilt, or if there are extenuating circumstances, family history, educational, health or occupational background which might favorably affect the punishment about to be imposed, the defendant should be eager to make this known to the trial court.

" . . . Adequate information about the defendant is of help to a court of review when a request is made for a reduction of sentence, but the power to reduce sentences benefits only the defendant and the information should be supplied by the defendant. If a defendant has a clean record and a good reputation and if there are circumstances which mitigate or explain his involvement in the crime for which he stands convicted, he has the privilege to bring these factors to the attention of the trial court and, through the record, to the reviewing court if an appeal is taken. It should not be the responsibility of the trial court to initiate the inquiry or to insert material into the record so that a defendant may possibly benefit from it on appeal. The obligation to preserve matters in the record which are relied upon to reverse a judgment should remain with the party who seeks the reversal. . . ."

People v. Thurman, 76 Ill App2d 41, 221 NE2d 798 (1966); People v. Hohmann, 72 Ill App2d 374, 219 NE2d 621 (1966).

Finally, as to defendants' alternative prayer for reduction of their sentences, the court must similarly take a negative stand. Our authority to reduce sentence is a power exercised only from within the realm of caution

and circumspection inasmuch as we are asked thereby to pass in judgment upon the determination of the trial judge, who resides clearly in the superior position to evaluate such matters during the course of the proceedings before him. People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965). Accordingly, Supreme Court Rule 615 is not held to sanction the reduction of a sentence within statutory limits unless first shown by the attacking party to be either manifestly excessive or of extreme departure from the underlying rationale for our system of penology. People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503 (1965). This defendants have failed to do. While defendants were shown to be youthful, amateurish offenders with nonfelonious criminal records, when viewed against their possible propensities to inflict grievous bodily harm or death, and failure to produce the missing money, we cannot say that the trial judge abused his discretion in imposing the sentences.

For the above reasons, the judgments are affirmed.

Judgments affirmed.

BURKE, P. J. and McNAMARA, J., concur.